**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Adel Habib ISKANDER, Defendant–Appellant.**

**No. 04–4188.**

United States Court of Appeals, Fourth Circuit.

May 9, 2005.

Argued: March 18, 2005.

Decided: May 9, 2005.

harmless error standard of review in cases in which a Sixth Amendment violation has occurred.

**ARGUED:** Rhonda Anne Anderson, Coral Gables, Florida, for Appellant. Jonathan Mark Mastrangelo, Assistant United States Attorney, Office of the United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Jennifer C. Smith, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Before WILKINSON and GREGORY, Circuit Judges, and Frederick P. STAMP, Jr., United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed in part, vacated in part and remanded by published opinion. Judge GREGORY wrote the opinion, in which Judge WILKINSON and Judge STAMP joined.

## OPINION

GREGORY, Circuit Judge:

This case arises out of an investigation of Adel Habib Iskander ("defendant" or "Iskander"). The United States ("government") alleges he systematically skimmed cash receipts and corporate checks received by two hotels he owned and operated, while simultaneously paying no federal corporate or individual income tax. Iskander was indicted, and after a three week trial, a jury found him guilty of three counts of tax evasion and one count of structuring financial transactions to evade reporting. The district court subsequently

sentenced Iskander to a term of imprisonment of forty-one months and ordered him to pay a $800,000 fine. On appeal, Iskander challenges the district court's evidentiary rulings, the sufficiency of the evidence, and his sentence. We find, after careful review, no reversible error in the district court's evidentiary rulings, and that the evidence in this case was sufficient to support the convictions. However, in following *United States v. Hughes*, 401 F.3d 540 (4th Cir.2005), our recently published opinion giving guidance to the application of *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we find plain error in Iskander's sentencing, exercise our discretion to notice the error, vacate the sentence, and remand to the district court for resentencing. Thus, we affirm in part, vacate, and remand in part.

## I.

Defendant was originally charged in a fifteen-count indictment with conspiracy, tax evasion, and structuring currency transactions, in violation of 18 U.S.C. § 371, 26 U.S.C. § 7201, and 31 U.S.C. § 5324(a)(3), respectively. A superseding indictment was filed one month before trial, charging defendant and his wife, Cynthia Lafon Iskander, with one count of conspiracy to structure transactions so as to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3), and eleven counts of structuring financial transactions to evade reporting requirements in violation of 31 U.S.C. § 5313(a)(3). The superseding indictment also charged Iskander individually with three counts of tax evasion in violation of 26 U.S.C. § 7201. All the foregoing conduct allegedly occurred in 1994, 1995, and 1996.

During the relevant time period, Iskander controlled two corporations, Ocean Properties, Inc., and Fenwick Properties, Inc. ("Ocean Properties" and "Fenwick Properties"), each of which operated a hotel. For most times relevant to the indictment Iskander was the sole shareholder of both companies. At trial the government alleged that between 1993 and 1996 defendant deposited approximately $780,000 in currency into personal accounts under his control for his benefit and the benefit of his family. The government provided evidence that defendant and his wife at various times deposited approximately $935,000 worth of corporate checks into personal investment accounts they held with Merrill Lynch and T. Rowe Price. In furtherance of the scheme, the government demonstrated, through bank records, that Iskander systematically structured cash deposits to banks to be under $10,000 to avoid the respective financial institutions' federal currency transaction reporting requirements. During this time, defendant reported no taxable income for either of the corporations, or for himself individually—thus, zero tax was paid to the federal government.

The government alleged that Iskander's tax evasion scheme involved skimming cash and credit card proceeds from both hotel properties and under-reporting the gross receipts actually earned by the two hotels—allowing him to conceal the diversion of funds. On his corporate tax returns, defendant claimed that the two hotels were losing money. In fact, he personally "wrote off" alleged loans he made to one of the hotels based on an assertion that the investment represented a "bad" (i.e., uncollectible) debt. At trial, the government presented evidence showing that the gross receipts of the hotels exceeded the amounts stated on defendant's corporate tax returns by hundreds of thousands of dollars—thus, showing that the hotels were likely profitable and capable of repaying the alleged loans.

The government also provided evidence that Iskander attempted to establish an explanation for the skimming and for hiding his tax evasion scheme, by placing shareholder loan balances on the corporate tax returns. Doing that allowed him to characterize the skimmed receipts as non-taxable repayments of loans. According to the government, these stated loan balances were patently false and the diverted funds were taxable income.

The government contended that Iskander was trained in business and accounting in his native Egypt and taught business classes in Egypt before emigrating to the United States. The government called one of Iskander's former hotel desk clerks, Sam Soliman ("Soliman"), who testified that Iskander had told him that he had been trained as an accountant. Iskander's accountant, John Vardavas ("Vardavas"), also testified that defendant rescinded a statement he had previously made to Vardavas averring that defendant had been a CPA in Egypt. The government also presented documentary evidence, in the form of a Dun & Bradstreet report and an affidavit, listing defendant's employment history as an accountant and as a controller. The report was admitted over defendant's hearsay objections. In rebuttal, defendant put forth testimony from Vardavas, who stated that defendant's record keeping skills were poor and that the records seized upon execution of the search warrant were incomplete and disorganized.

After a three week trial, a jury found Iskander guilty of three counts of tax eva-

sion and one count of structuring financial transactions to evade reporting. Mrs. Iskander was acquitted.[1] Iskander timely filed this appeal.

## II.

■ We review the district court's decision as to admissibility of evidence for abuse of discretion, and we will not find an abuse unless a decision was "arbitrary and irrational." *United States v. Weaver*, 282 F.3d 302, 313 (4th Cir.2002) (discussing abuse of discretion standard in context of "decisions as to admissibility of evidence").

■ To prevail on a sufficiency of the evidence claim, Iskander must show that when evidence is viewed in the light most favorable to the government, *see United States v. Stewart*, 256 F.3d 231 (4th Cir. 2001), no "rational trier of fact could have found" beyond a reasonable doubt, that he acted willfully, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ In light of the new sentencing scheme announced in *Booker*, we state in *Hughes* that we will review Sixth Amendment sentencing challenges, raised for the first time on appeal, under plain error analysis. 401 F.3d at 547.

## III.

Iskander challenges two evidentiary rulings made by the district court and the sufficiency of the evidence. First, he argues that the district court erred in excluding defendant's evidence supporting his defense,[2] specifically by refusing to al-

---

**1.** At the close of the government's case in chief, the trial court granted Mrs. Iskander's Motion for Judgment of Acquittal as to Count One of the superseding indictment. As there were no unknown coconspirators alleged, the trial court then granted defendant judgment of acquittal as to the same conspiracy count. After deliberating, the jury acquitted Mrs. Is-

kander on Counts 4, 5, 7, 9, and 10, and was unable to reach a verdict on Counts 6, 8, 11, 12, and 13.

**2.** Iskander argues that:

The trial court's ruling "gutted" the Appellant's case, stripping him of the ability to confront

low defendant's expert to testify about unclaimed depreciation deductions he alleges were available to his hotels; defendant asserts that such testimony would have rebutted both the government's tax witness, who testified that the "bad-debt" deductions taken on defendant's personal tax returns were improper and therefore taxable income, as well as the government's evidence that the appellant was a sophisticated accountant, and therefore "willfully" violated 26 U.S.C. § 7201 and 31 U.S.C. § 5324(a)(3). Second, Iskander argues that the district court erred by admitting a Dun & Bradstreet report that contained information regarding the defendant's educational background and employment history.[3] Third, defendant

contends that the government's evidence was insufficient to support the three tax evasion convictions.

In addition, Iskander makes two related challenges to his sentence. First, he alleges that the district court did not make the required factual findings necessary to support the $800,000 fine imposed at sentencing. Second, defendant asserts that under *Blakely v. Washington*, — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *Booker*, the district court's sentence violated his right to a jury trial insofar as it rested on factual findings made by the judge at the sentencing hearing. We address each of defendant's arguments in turn.

### A.

■ Defendant contends that the district court abused its discretion in excluding evidence that supported his defense. In an effort to rebut the government's expert, defendant retained an accounting expert, Ivan B. Mehler ("Mehler"). The defense proffered, fourteen days into trial, that Mehler's testimony would show that Iskander had failed to use the depreciation schedules to which he was entitled and "as a result, utilizing any accounting or reconstruction method the government preferred, no tax was owed." Appellant's Br. at 23. According to defendant, Mehler's testimony would have shown that contrary to the government's assertions, "defendant was not cheating the IRS; [he] was not a sophisticated accountant, and that any inaccuracies in his tax returns had worked to his disadvantage more so than to the IRS[']." *Id.* at 24. Additionally, defendant contends that Mehler would have testified and used summaries of the depreciation schedules to show that the government overstated the income from the corporations and would have demonstrated that "repayments of the principal on loans or return of capital contributions are not, as the Government's theory alleged, taxable income that must be reported on a tax return." *Id.*

The government objected to Mehler's summaries, on grounds of hearsay, relevance, and timeliness, and moved to exclude five of them. The summaries were based on specific valuations of furnishings and other property at the hotel. The district court found that portions of the defendant's expert testimony relating to the

---

the additional tax returns beyond those charged in the indictment that the Government entered into evidence in an effort to show that the Appellant acted "willfully." As a result the trial court's ruling was an abuse of discretion because it failed to liberally interpret relevance, or permit the Appellant to rebut that his under-reporting and/or improper bad debt deductions were done willfully, in bad faith or with evil intent.
Appellant's Br. at 34.

**3.** Relying on an affidavit provided by a Dun & Bradstreet custodian of records, the district court allowed the government to introduce the report as a business record pursuant to Fed.R.Evid. 803(6) and 902(11).

specific summaries and details regarding the depreciation schedules were irrelevant and that the probative value of the challenged evidence was therefore out-weighed by its potential to cause jury confusion.[4] Specifically, the court stated:

> This whole question of depreciation it seems to me truly is a red herring in this case.
>
> . . . .
>
> I fail to see the connection between depreciation that was not taken on the corporate tax returns and the failure of the defendant, if it was a failure, to declare on the tax returns that were filed income taken from the corporations.

J.A. 1302, 1304. Thus, the district court excluded the depreciation schedules, summaries, and Mehler's testimony regarding them.

■ Trial courts have considerable discretion to determine whether to admit expert testimony. *See Hamling v. United States*, 418 U.S. 87, 108, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *see also United States v. Jones*, 913 F.2d 174, 177 (4th Cir.1990) ("A reviewing court should not disturb a trial court determination to admit evidence unless the trial court has acted 'arbitrarily or irrationally.' ") (quotation and citation omitted). Rule 403 states that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence. Fed.R.Evid. 403.

The excluded portion of Mehler's testimony relating to the detailed summaries and depreciation schedules may have shown that Iskander's corporations were entitled to take additional corporate paper deductions. Such a showing might have been relevant if the defendant was charged with corporate tax evasion. However, the grand jury charged Iskander with evading *personal* income tax by skimming receipts from his businesses and then converting those receipts to his own use without reporting any income on his *personal* tax returns. The government referred to the corporate returns to prove that Iskander under-reported the gross receipts from his hotels, because that fact supports their skimming theory and relates to their argument that the bad-debt deductions, taken on his personal tax returns, were wilfully false. The availability of the depreciation deductions does not affect the gross receipts of the corporations. Neither does the existence of those deductions undermine the government's "bad-debt" theory. Fenwick Properties was profitable based on the actual gross receipts presented by the government to the jury. Therefore, the government used the corporate tax returns solely to show the defendant's claimed bad-debt deduction on his personal tax return was wilfully false, because he falsely asserted, as demonstrated on his corporate tax returns, that Fenwick Properties was losing money, a necessary predicate to claiming the bad-debt deduction. Consequently, the presentation of detailed valuation summaries and depreciation

---

4. The court stated that:

the evidence is excluded both because it is irrelevant, and, to the extent that it is marginally relevant under Rule 403, the waste of time and judicial resources and the confusion of the issues that would be attended to try to make sense of all this retrospective redoing of the corporate tax returns seriously undermines the Court's legitimate interest in getting this case concluded in an orderly fashion. J.A. 1304.

schedules for the corporations was irrelevant and potentially confusing to the jury.

Importantly, the court's exclusion of parts of Mehler's testimony did not impact defendant's ability to argue that his failure to claim all depreciation deductions available to the corporations showed his lack of sophistication in tax and financial matters. During the cross examination of Vardavas, defense counsel had already elicited testimony that Vardavas believed that Iskander had understated the corporate depreciation those businesses were entitled to take. Furthermore, Mehler was allowed to testify to the general fact that, in his opinion, Iskander had not taken all the depreciation to which the hotels were entitled.

■ The district court also ruled that Iskander failed to present to the government, in a timely fashion, the name of the expert and the evidence on which the expert planned to rely. The depreciation deduction testimony was based in significant part on Mehler's expert opinion concerning property valuations and depreciations. The government requested notice of the defendant's intent to offer expert opinion evidence at trial and Iskander failed to provide timely notice of his intent to introduce expert testimony on the matters of property valuations and depreciations or the basis of his expert's opinions.[5] Rule 16 of the Federal Rules of Criminal Procedure required Iskander to do both. The rule provides that:

> (C) Expert witnesses. The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—
>
> (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or
>
> (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
>
> This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications

Fed.R.Crim.P. 16.

Iskander does not deny that he failed to fully comply with the rules concerning expert discovery. Instead he argues that within the context of the government's "late" superseding indictment, timeliness should not be an issue for the government and that the government did not need time to prepare for Mehler's testimony. The district court did not agree.[6] Based on an abuse of discretion standard of review and the facts related above, we cannot find that the court's decision to exclude a portion of defendant's expert witness' testimony was arbitrary and irrational. *See* Fed. R.Crim.P. 16(d)(2)(C). ("Failure to Comply. If a party fails to comply with this rule, the court may: ... prohibit that party from introducing the undisclosed evidence; or enter any other order that is just under the circumstances.").

### B.

Next, Iskander argues that the district court's ruling, admitting a Dun & Bradstreet report as a business record, was

---

**5.** The government did not offer its federal tax accountant as an expert.

**6.** The court stated: "I credit the government's assertion that to meet the schedules depicted in Defense Exhibits 21 and 21A, would indeed, require considerable expertise. We are essentially talking a depreciation schedule going back to 1985. The government does not have access to these records." J.A. 1303.

error. The report supported the government's assertion that Iskander's educational background in Egypt and work experience involved accounting. Defendant avers that the "Dunn [sic] & Bradstreet Affidavit contains uncorroborated, hearsay information from an unknown source." Appellant's Br. at 34. Defendant contends that the affidavit was inadmissible hearsay, which should have been excluded, because it was used "as a basis to show an essential element of the offenses: an accused's willful intent to commit a tax evasion offense or structuring." *Id.* at 36.

During trial, Iskander made a Confrontation Clause type objection, asserting that the Dun & Bradstreet report was improperly admitted because he did not have the opportunity for cross-examination. The Supreme Court held in *Crawford v. Washington*, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Court in *Crawford* divided out-of-court statements into two categories, those that are testimonial in nature and those that are not, asserting that testimonial hearsay is the "primary," if not the only, object of the Confrontation Clause. *See id.* at 53, 124 S.Ct. 1354. It then held that the testimonial statement of a person who does not appear as a witness at the trial may not be admitted against the accused to prove the truth of the statement unless the declarant is unavailable to appear as a witness and the accused had a prior opportunity for cross-examination. *Id.*

 We find that we need not reach the issues of whether the Dun & Bradstreet report qualifies as a business record or whether the admission of the report violates the Confrontation Clause, as set out

in *Crawford,* because the Dun & Bradstreet report was merely cumulative of other testimony establishing that Iskander had accounting and business experience. We articulated in *Cooper v. Taylor,* 103 F.3d 366, 370 (4th Cir.1996), the standard to determine if a trial court error is harmless. We stated that:

> In order for an error to have a substantial and injurious effect or influence, it must have affected the verdict. Because juries have a limited number of responses to give in a criminal trial—guilty, innocent, or cannot decide—an error is harmless when the error did not substantially sway or substantially influence the response.

> Thus, if the evidence is not merely sufficient, but so powerful, overwhelming, or cumulative that the error simply could not reasonably be said to have substantially swayed the jury's judgment, then the error is not harmful. On the other hand, if the federal court is in grave doubt about whether the trial error had a substantial and injurious effect or influence on the verdict and therefore finds itself in virtual equipoise about the issue, the error is not harmless.

*Id.* at 370 (citations and internal quotation marks omitted).

The government presented testimony by Soliman and Vardavas establishing that Iskander had knowledge of accounting practices and was a sophisticated businessman. Further, the government presented evidence to show that he acted with the requisite willful intent through evidence exposing the evasion scheme itself. The government provided both documentary and testimonial evidence showing that Iskander deliberately under-reported his corporate receipts and then took affirmative steps to conceal the diversion of those funds—funds he used to his own benefit. Thus, we find that any error caused by the

admission of the Dun & Bradstreet report was cumulative and therefore harmless.

### C.

Iskander contends, in his third argument, that the evidence presented at trial was insufficient to prove willful tax evasion. Iskander focuses on the evidence the government introduced to show that he was aware of accounting principles to support its assertion that he acted willfully. Defendant describes that evidence as insubstantial, hearsay, and conjecture. Thus, in essence, Iskander asserts that the government failed to carry its burden.

■ As discussed *supra,* the government presented testimonial evidence during the trial to support its assertion that Iskander was familiar with principles of accounting and business. In addition, the government introduced evidence regarding Iskander's knowledge that the monies he was taking from the hotels did not represent repayments of shareholder loans and that the then-claimed bad-debt deductions on his personal tax returns were based on false representations that Fenwick Properties was unprofitable.[7] This evidence is substantial and would allow a rational trier of fact to find that defendant deliberately evaded his personal income tax.

In the alternative, Iskander avers that he had a good faith belief, although it may have been unreasonable, that he was complying with the tax laws. Defendant cites *Cheek v. United States,* 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), for the proposition that a belief, in good faith, that one has complied with the tax laws negates willfulness and is therefore a defense, even if the belief is unreasonable. The Court in *Cheek* did find that the courts below were wrong to hold that "a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law, if it is to negate willfulness, must be objectively reasonable." *Id.* However, the taxpayer's subjective beliefs regarding his "ignorance of the law" or his "misunderstanding of the law" is a question for the jury. *Id.* at 203, 111 S.Ct. 604.

In the case at bar, Iskander had the opportunity to present evidence regarding his good faith belief or ignorance of the tax laws. Nevertheless, the jury found him guilty on Counts Two, Three, and Ten which state that the defendant "did willfully attempt to evade and defeat a large part of the income tax due." J.A. 32, 33, 35. In other words, the jury found beyond a reasonable doubt that Iskander did not have a subjective belief, irrational or otherwise, that he was not violating the law when he took cash from the hotel properties and did not declare those monies as income and when he subsequently wrote the loans off as an uncollectible bad-debt on his personal tax returns. Defendant does not assert that the district court did not properly instruct the jury on the good faith defense or on the government's burden of proof. Therefore, we find that

---

7. The government presented testimony from Vardavas and Soliman to show that Iskander kept a second set of records reflecting the "actual" income of his two hotels versus the under-reported gross receipts he gave to his accountant. There was also evidence regarding a loan application prepared by defendant in September 1995—two days before the date on which he filed the Ocean Properties tax return for 1994—in which he made representations concerning the gross receipts for the hotel. In the loan application he submitted information showing that the hotel grossed approximately one million dollars, but in his tax return he alleged the hotel made $700,000. The government also submitted evidence showing that Iskander made almost $800,000 in structured currency deposits—deposits all under the $10,000 threshold that triggers notification to the IRS. During this time, Iskander filed tax returns reporting zero taxable income.

viewed in a light most favorable to the government, there was sufficient evidence to support the jury's verdict.

### D.

Finally, Iskander challenges his sentence. His most persuasive argument is that because the district court enhanced his sentence based on its finding that he used sophisticated means to commit tax evasion, and not the jury's verdict, his sentence violates the Sixth Amendment.

The district court, in computing Iskander's offense level, relied on the 1995 Sentencing Guidelines,[8] which allow for the grouping of the offenses[9] when the offense level is largely determined by the total amount of harm or loss. *See* U.S.S.G. § 3D1.2(d). The guideline range for violation of 26 U.S.C. § 7201 is found in U.S.S.G. § 2T1.1(a)(1), and calls for a base offense level of 17 based on a tax loss of $363,859.[10] Because the court determined that sophisticated means were used to impede discovery of the existence or extent of the offense, two levels were added, pursuant to U.S.S.G. § 2T1.1(b)(2), bringing the offense level to 19. In computing Iskander's criminal history, the PSR notes that defendant had a previous conviction of child endangerment and was on probation at the time the instant offense was committed, resulting in a total of three criminal history points. According to the Sentencing Guidelines' Table, three criminal history points constitute a criminal history category of II. Consequently, the district court sentenced defendant within the Sentencing Guidelines' range of 33 to 41 months of imprisonment, when it imposed the sentence of 41 months. Absent the two point enhancement, Iskander's guideline range would have been 27–33 months.

In *Booker*, the Supreme Court held that the mandatory manner in which the federal Sentencing Guidelines required courts to impose sentencing enhancements based on facts found by the court, by a preponderance of the evidence, violated the Sixth Amendment. *See Booker*, 125 S.Ct. at 756–57. The Court remedied the constitutional violation by severing two statutory provisions, thereby making the Sentencing Guidelines advisory. *Id.* at 764. Thus, we recognized in *Hughes*, that "there are two potential errors in a sentence imposed pursuant to the pre-Booker mandatory guidelines regime: a Sixth Amendment error, . . . and an error in failing to treat the guidelines as advisory." 401 F.3d at 552. Because these issues were not clearly raised during the sentencing hearing, we review the district court's sentence for plain error. *Id.* at 547 ("Because issue

---

**8.** Guideline section 1B1.11 instructs the court to use the Sentencing Guidelines in effect on the date of sentencing unless that manual would violate the *ex post facto* clause of the United States Constitution. The probation officer found in the Presentence Report ("PSR") that the 2003 manual violated the *ex post facto* clause, therefore, the officer recommended, and the court appropriately used, the 1995 Sentencing Guidelines because they were in effect during the time when the offenses of conviction were committed and it benefited defendant.

**9.** When counts are grouped under § 3D1.2(d), the offense level applicable to a Group is the offense level for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the group. In this case, that was Counts Two or Three, in violation of 26 U.S.C. § 7201—tax evasion.

**10.** The district court adopted the PSR which states that the tax loss for the purpose of computing Iskander's guideline range was $363,859 based on what the government established at trial through its tax witness. The tax loss calculation included only unreported income from the diversion of corporate checks to personal investment accounts held by the Iskanders and the tax loss from the fraudulent bad-debt deductions.

was not advanced in the district court, we review the district court decision for plain error.").

 The district court clearly made a two point enhancement, when it found that Iskander had used sophisticated means. This finding was based on a preponderance of the evidence standard and lay outside of the jury's verdict. Therefore, under *Booker*, the court erred in imposing a sentence on Iskander based on the two point enhancement,[11] because his sentence then exceeded the maximum sentence authorized by the facts found by the jury alone. *Id.* at 547–48.[12] Following this court's reasoning in *Hughes*, we find that the district court's error was plain and prejudicial, and we vacate Iskander's sentence and remand for resentencing "consistent with the remedial scheme set forth in Justice Breyer's opinion for the Court in *Booker*." *Id.* at 544.

## IV.

Based on the foregoing, we affirm Iskander's convictions, vacate his sentence, and remand to the district court for resentencing, in accordance with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

---

11. We of course offer no criticism of the district judge, who followed the law and procedure in effect at the time of Iskander's sentencing.

12. This court states in *United States v. Gray* that— Although the Sentencing Guidelines are no longer mandatory, *Booker* makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing." 125 S.Ct. at 767. On remand, the district court should first determine the appropriate sentencing range under the Guidelines, *Hughes*, 401 F.3d 540, 546. The court should consider this sentencing range along with the other factors described in 18 U.S.C. § 3553(a), and then impose a sentence. *Id.* If that sentence falls outside the Guidelines range, the court should explain its reasons for the departure, as required by 18 U.S.C. § 3553(c)(2). *Id.* The sentence must be "within the statutorily prescribed range and ... reasonable." *Id.*

No. 02–4990, 405 F.3d 227, 244 n. 10, 2005 WL 994822, at *13, 2005 U.S.App. LEXIS 7439, at *42 (4th Cir. Apr. 29, 2005).