**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4273**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SAID KARIM HAYEZ,

Defendant - Appellant.

**No. 05-4407**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

SAID KARIM HAYEZ,

Defendant - Appellee.

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, Chief District Judge. (CR-03-296)

Argued: September 27, 2007        Decided: January 8, 2008

Before NIEMEYER and MICHAEL, Circuit Judges, and T. S. ELLIS, III, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Michael and Senior Judge Ellis joined.

---

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant/Cross-Appellee. Clay Campbell Wheeler, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant/Cross-Appellee. George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

A jury convicted Said Karim Hayez on two counts of filing false Form 1040 U.S. Individual Income Tax Returns for calendar years 1997 and 1998, by failing to report as income $1,375,696 that he diverted to himself from a company that he owned, in violation of 26 U.S.C. § 7206(1). The district court sentenced Hayez to 36 months' imprisonment on each count, to run concurrently.

Appealing his conviction, Hayez contends that the district court abused its discretion in denying him permission to present expert psychiatric evidence to prove that he, as a pathological gambler, was only borrowing the money from his company in order to gamble, win big, and pay it all back. He asserts that this evidence would have supported his theory that he considered the diverted funds to be loans rather than income and therefore did not "willfully" file false tax returns. He also challenges the district court's exclusion of expert testimony identifying "seven primary indicators" of tax fraud, the absence of which would also have purportedly demonstrated that the diverted funds were loans.

In its cross-appeal, the government challenged the reasonableness of the district court's variance sentence, which was 43% below the 63-72 month range recommended by the Sentencing Guidelines. Following the Supreme Court's recent decisions in Gall v. United States, 552 U.S. __, No. 06-7949 (Dec. 10, 2007), and Kimbrough v. United States, 552 U.S. __, No. 06-6330 (Dec. 10,

3

2007), however, the government voluntarily dismissed its cross-appeal, and we approve its dismissal request.

With respect to the evidentiary rulings, we conclude that they fell well within the district court's broad discretion in regulating the admission of evidence at trial and accordingly affirm.

I

After Hayez, an immigrant from Afghanistan who became a naturalized citizen in 1987, earned a doctorate in psychometrics, he formed Columbia Assessment Services, Inc. ("CAS"), a corporation located in Raleigh, North Carolina, to carry on as a professional testing service specializing in conducting and certifying licensure examinations. Among other things, CAS designed and administered certification tests for alcohol and substance abuse counselors, athletic trainers, and others. As the company's sole shareholder, Hayez designated himself as the president of the corporation.

Some time prior to 1995, Hayez embarked on a scheme to divert funds from CAS for his personal use. He did this primarily by directing a CAS employee to modify CAS invoices to show a lower amount due than had been properly charged to and paid by the client. Hayez then pocketed the "overpayment" without accounting for the money. In 1995, the Internal Revenue Service audited CAS and determined that Hayez had diverted more than $137,000 in

corporate funds. Rather than prosecute Hayez, however, the IRS assessed various civil penalties against him.

About six months after the conclusion of the 1995 audit, Hayez developed a new scheme to resume diverting money from CAS. Instead of skimming from payments sent to CAS by clients, Hayez directed a CAS employee to generate fake "fee summaries," which purportedly indicated that CAS owed refunds to clients, such as exam fees collected from applicants. These documents justified CAS employees' preparation of checks payable to the clients, which Hayez then took to his personal bank and converted. As president of CAS, he engaged in a complicated two-step process of conversion. First, he exchanged the CAS checks for official bank checks that were made payable to the same CAS clients. Then, on behalf of the corporation, he endorsed "not used for purposes intended" on the checks and exchanged them for official bank checks made payable to himself, his creditors, or CAS itself. In this way, Hayez diverted $485,416 from CAS to himself in 1997 and $890,280 in 1998.

Hayez has stated that he used these funds primarily to pay gambling debts, other consumer debt, and legitimate loans taken from CAS. He said that gambling has been a longtime problem for him. He began gambling at a young age and was a "compulsive gambler" by 1980. By his own estimate, Hayez states that he has lost "millions of dollars" in gambling. By 1990, he also began abusing alcohol. He attributes his gambling addiction and alcohol

abuse to post-traumatic stress disorder that was diagnosed in 2001. He claims that the disorder resulted from the murder of his father, when Hayez was in the first grade, and from subsequent abuse by his older brother.

In his Form 1040 Individual Income Tax Return for 1997, Hayez failed to report as income the $485,416 obtained from CAS through his check conversion scheme, and in his return for 1998, he again failed to report as income the $890,280 similarly obtained from CAS.

Hayez was indicted in two counts of filing false tax returns, one count for each calendar year. At trial, he sought to introduce the testimony of an expert psychiatrist that because of his gambling addiction, he did not have the requisite intent to violate the law. He also sought to introduce expert testimony about the common indicators of fraud in an effort to demonstrate that the diversions from his company were only loans. The district court excluded the testimony of both witnesses.

After the jury convicted Hayez, the district court denied Hayez's motion for a downward departure under the Sentencing Guidelines but nonetheless imposed a variance sentence of 36 months' imprisonment on each count, to run concurrently.

Hayez now appeals the two evidentiary rulings.

Hayez contends first that the district court abused its discretion in excluding the expert testimony of a psychiatrist who would explain that Hayez was a pathological gambler and that therefore he did not have the requisite intent to commit a crime under 26 U.S.C. § 7206(1).[1] He claims that as a pathological gambler, he considered the diverted funds to be loans, which, by definition, are not income, and thus he did not need to report the money as income. The expert proposed to testify that pathological gamblers "chase their losses," holding an honest but irrational belief that they will win back all they have lost if they just gamble one more time.

In excluding the testimony, the district court ruled that the evidence was not relevant to the specific intent element of the offense with which Hayez was charged, and, even if there was some marginal relevance, the likelihood of jury confusion substantially outweighed the testimony's probative value. See Fed. R. Evid. 403.

Hayez's principal argument on appeal is made on the assumption that the district court applied the Insanity Defense Reform Act

---

[1]Section 7206(1) of Title 26 provides that any person who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter" has committed a felony punishable by imprisonment of "not more than 3 years." (Emphasis added).

("IDRA"),[2] 18 U.S.C. § 17, to exclude the testimony.  As Hayez stated in his brief:

> The government speculated that Mr. Hayez intended to offer the evidence in order to demonstrate either an insanity defense or "diminished capacity" short of insanity.  This speculation was wrong.  Unfortunately, this misunderstanding persisted throughout the pre-trial proceedings and ultimately caused the district court to commit legal error in refusing to allow Mr. Hayez to present this evidence.

Relying on United States v. Worrell, 313 F.3d 867, 874 (4th Cir. 2002), he maintains that the psychiatric evidence was admissible to rebut the government's evidence of mens rea, a use which should not have been confused with its use under the IDRA.

Our review of the record, however, does not support Hayez's assumption that the district court's ruling was based on the IDRA.  The district court repeatedly stated on the record that it understood the nature of Hayez's proffer.  For example, the court said, "Psychiatric evidence [can be] used to demonstrate lack of specific intent, that is established.  Congress didn't under the [IDRA] bar -- the use of psychiatric evidence -- as argued by the Defendant."  The court also observed, "[T]he Defendant argues evidence that merely [aids] the trier in determining the Defendant's specific state of mind with regard to . . . the time

_____

[2]The IDRA prohibits evidence of mental disease or defect as an affirmative defense unless the defendant is offering a full-fledged insanity defense in which he claims that, due to the disease or defect, he "was unable to appreciate the nature and quality or the wrongfulness of his acts."  18 U.S.C. § 17.

[the actions were] committed which [is] not an affirmative defense, but is evidence that goes specifically to whether the Government has carried its burden." Accordingly, we reject Hayez's principal argument that the district court erred as a matter of law in applying the IDRA to exclude his expert psychiatric testimony.

On the merits of the evidentiary issue, the district court was concerned about the relevance of the evidence and the possible confusion that it might cause the jury. As the court stated, "There has to be a link . . . between the specific psychiatric evidence and mens rea." "[T]he ground of this denial rests on the speculativeness of the link between testimony and the mens rea." The court was also concerned that the psychiatric testimony would "confuse this jury" because it discussed the tendency of pathological gamblers to "commit[] illegal acts such as forgery [or] fraud to finance gambling," leading to the possibility of "confusion as to whether such an issue [exists] here." "[E]ven if relevant it's so likely to confuse the jury. . . . [T]he mindset would be such that testifying to say we should excuse this illegal behavior because Dr. Hayez is a pathological gambler. It seeds their thought process with a consideration of [whether] they should be excusing the illegal conduct."

In short, the district court determined that psychiatric testimony about pathological gambling had little or no probative value with respect to the question of whether Hayez possessed the

specific intent willfully to file a false tax return, believing it to be false, and that any probative value it may have had was substantially outweighed by the likelihood that the jury would be confused by the ancillary issue raised.  This ruling was not arbitrary or irrational, but fell well within the broad discretion of the court to regulate the admissibility of evidence at trial. See United States v. Iskander, 407 F.3d 232, 236 (4th Cir. 2005); United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002).

III

Hayez also contends that the district court abused its discretion in excluding expert testimony that would identify the "seven primary indicators" of tax fraud.  Hayez attempted to introduce the evidence to rebut testimony by a government witness (Hayez's former accountant) who characterized Hayez's transactions as "diversions" and "misappropriations."  The district court excluded this testimony based on relevance and confusion, as well as Hayez's lack of notice to the government that he planned to introduce the testimony, as required by Federal Rule of Criminal Procedure  16(b)(1)(C).

Hayez claims that he did not give notice of his intent to use the expert witness because he did not recognize that he needed the testimony until he heard the testimony of his former accountant that the transactions involved were "diversions" and "misappropriations."  Hayez maintains that he should have been

10

allowed to respond to that testimony with the testimony of a forensic accountant, who would have cast doubt on the characterizations by pointing out that the transactions bore none of the "seven primary indicators" of fraud.

Having reviewed the record carefully, we conclude that the district court did not abuse its discretion in excluding the testimony of the forensic accountant. First, Hayez was not caught off guard by his former accountant's testimony. He knew that the government's case against him involved his failure to report diverted funds as income on his individual income tax returns. It is inconceivable that Hayez could later claim that he was surprised that the government presented evidence characterizing his transactions as diversions or misappropriations. The lack of notice under Rule 16(b)(1)(C) alone was sufficient to justify the district court's ruling.

In addition, however, Hayez had the opportunity to cross-examine his former accountant about the accountant's characterizations of the transactions as statements of fact. To have allowed an expert to give an opinion that the factual characterizations were wrong would have yielded nothing probative. It would only have been an effort to supplant the court's function in describing for the jury the elements of tax fraud and the jury's function in finding the facts.

11

Finally, no government witness testified about the "primary indicators" of tax fraud so as to require rebuttal.  The district court concluded that Hayez's proposed evidence was too  abstract and would take the case "too far afield," observing that the jury was "not going to know what this case is about."  We conclude that the court acted well within its discretion in excluding the testimony.

Accordingly, we affirm the judgment of the district court.

<u>AFFIRMED</u>