**UNITED STATES of America,**

v.

**Peter Robert JORDAN and Arthur Lorenzo Gordon, Defendants.**

**No. CRIM. 3:04CR58HEH.**

United States District Court,
E.D. Virginia.
Richmond Division.

Nov. 14, 2005.

---

David John Novak, Roderick C. Young, United States Attorney's Office, Richmond, VA, for Plaintiff.

Cary Breckinbridge Bowen, Bowen Champlin Carr & Rockecharlie, Gerald Thomas Zerkin, Frank W. Dunham, Jr., Office of the Public Defender, Michael N. Herring, Bricker & Herring PC, Claire Grimmer Cardwell, Stone & Cardwell PLC, Richmond, VA, for Defendants.

### MEMORANDUM OPINION

(Denying Defendants' Motion *In Limine* Regarding Hearsay Statements of Octavia Brown)

HUDSON, District Judge.

THIS MATTER is before the Court on Defendants' motion to bar certain hearsay statements of Octavia Brown ("Ms. Brown") to non-governmental agents. All parties have submitted memoranda of law in support of their respective positions. After reviewing the memoranda filed by both sides, the Court heard oral argument and issued its ruling on October 28, 2005. For the following reasons, the Court is of the opinion that portions of the statements given by Octavia Brown to Paul Adams are admissible.

### I. Background

By memorandum opinion issued January 28, 2005, this Court excluded from use as evidence the testimony of Ms. Brown before the grand jury and her statements to the Richmond City Police Department ("RPD"). *See United States v. Jordan,* 357 F.Supp.2d 889 (E.D.Va.2005). The Court found that both statements offended the rule espoused by the Supreme Court of the United States in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Specifically, this Court concluded that both statements were testimonial in nature. *See Jordan,* 357 F.Supp.2d at 898–905.

The United States has now indicated that it wishes to introduce into evidence

statements made by Ms. Brown to a personal friend, Paul Adams ("Mr. Adams").

Both defendants oppose the admissibility of the statements on similar but not identical grounds. Defendant Jordan argues that Ms. Brown's statements to Mr. Adams, while not barred by *Crawford*, are nonetheless hearsay and inadmissible. Defendant Jordan contends that the statements are not self-incriminatory and do not bear any particularized guarantees of trustworthiness.

Defendant Gordon argues that Ms. Brown's statements to Mr. Adams are testimonial, because they are in anticipation of providing a statement to the police, and therefore, implicate the safeguards of *Crawford*. Defendant Gordon also maintains that the statements are neither self-incriminatory nor reliable.

The United States, on the other hand, argues that the statements clearly fall outside the definition of testimonial articulated in *Crawford*. They contend that neither statement was given in anticipation that it would ever be used as formal evidence. Furthermore, the government asserts that the statements were made by Ms. Brown under circumstances strongly suggestive of reliability, and when viewed collectively, they are clearly self-incriminating.

## II. Analysis

In *Crawford*, the Supreme Court divided out-of-court statements into two (2) categories: testimonial and non-testimonial. *See* 541 U.S. at 60–69, 124 S.Ct. at 1369–74; *United States v. Iskander*, 407 F.3d 232, 240 (4th Cir.2005). "Testimonial statements implicate the right of cross-examination guaranteed by the Confrontation Clause. Those which are non-testimonial are governed by the Rules of Evidence pertaining to hearsay statements." *Jordan*, 357 F.Supp.2d at 898; *see also United States v. Rueda–Rivera*, 396 F.3d 678,

680 (5th Cir.2005) ("[T]he disputed ... conversations are nontestimonial and thus, assuming compliance with the Federal Rules of Evidence, are admissible."); *United States v. Hendricks*, 395 F.3d 173, 183–84 (3d Cir.2005) ("[T]he district court properly relied on official, non-testimonial public records admissible under the Federal Rules of Evidence."); *United States v. Reyes*, 362 F.3d 536, 540–41 (8th Cir.2004) (allowing the admission of non-testimonial co-conspirator statements after the government satisfied Federal Rule of Evidence 801). In particular, the Supreme Court in *Crawford* noted that "an accuser who makes a formal statement to government officers bears testimony in a sense that *a person who makes a casual remark to an acquaintance does not.*" 541 U.S. at 51, 124 S.Ct. at 1364 (emphasis added).

■ The Supreme Court in *Crawford* gave three examples of testimonial statements: (1) "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[;]" (2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[;]" and (3) "statements ... under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51–52, 124 S.Ct. at 1364. The critical *Crawford* issue here is whether Ms. Brown, at the time she made her statements to Mr. Adams, reasonably believed these statements would be later used at trial.

### A. Non–Testimonial Nature of Ms. Brown's Statements

The Court does not believe that any statement given by Ms. Brown to Mr.

Adams, prior to her conversation with the RPD, is testimonial. This Court will exclude, however, any statement made by Ms. Brown following her interview by the RPD, as arguably within the outer perimeter of testimonial statements barred by *Crawford.* The statements will therefore be weighed under Rule 804(b)(3) of the Federal Rules of Evidence, the teachings of *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and the omnibus reliability standard.

In *Roberts,* the Supreme Court considered "the relationship between the Confrontation Clause and the hearsay rule with its many exceptions." 448 U.S. at 62, 100 S.Ct. at 2537. The Court concluded that when a party seeks to introduce hearsay without giving the opposing party the benefit of cross-examination, the Confrontation Clause requires a showing of unavailability. Assuming the hearsay declarant is sufficiently unavailable, his statement can only be admitted if it "bears adequate indicia of reliability." *Id.* at 66, 100 S.Ct. at 2539 (internal quotation marks omitted). This indicia of reliability can be "inferred without more in a case where the evidence falls within a firmly rooted hearsay exception" or with "a showing of particularized guarantees of trustworthiness." *Id.* A hearsay exception is "firmly rooted" "if, in light of longstanding judicial and legislative experience, it rests on such a solid foundation that admission of virtually any evidence within it comports with the substance of the constitutional protection." *Lilly v. Virginia,* 527 U.S. 116, 126, 119 S.Ct. 1887, 1895, 144 L.Ed.2d 117 (1999) (quotation marks and citations omitted). Under the trustworthiness test, the Sixth Amendment allows admission of a hearsay statement not

firmly rooted in any hearsay exception "[w]hen a court can be confident—as in the context of hearsay falling within a firmly rooted exception—that 'the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility.'" *Id.* at 136, 119 S.Ct. at 1900 (quoting *Idaho v. Wright,* 497 U.S. 805, 820, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990)).

Rule 804(b)(3) is one type of these "firmly rooted hearsay exceptions." *See id.* at 126–27, 119 S.Ct. at 1895. The Rule states, in relevant part, that hearsay is admissible if a declarant is unavailable as a witness and "[the] statement which was at the time of its making ... so far tended to subject the declarant to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R. Evd. 804(b)(3). To admit hearsay under Rule 804(b)(3), the Fourth Circuit requires that "the declarant is unavailable; the statement is genuinely adverse to the declarant's penal interest; and 'corroborating circumstances clearly indicate the trustworthiness of the statement.'" *United States v. Lowe,* 65 F.3d 1137, 1145 (4th Cir.1995).

## B. Admissibility Limits of Ms. Brown's Non–Testimonial Statements

■ First, the declarant, having committed suicide, is obviously unavailable to testify. Second, this Court is of the opinion that a number of her statements are inculpatory in nature. These statements relate to Ms. Brown's complicity in a plan to lure a drug dealer to an apartment and what she observed and did after she emerged from the bedroom. The events that followed all seem to fall within the ambit of the conspiracy.[1] Admittedly, Ms.

---

1. "As a general proposition, the elements of a

conspiracy offense are: 'an agreement among

Brown may not have been able to foresee the level of violence contemplated by the other co-conspirators; however, because she was present and aiding and abetting in the achievement of the conspiratorial objectives, she is legally responsible for all that followed. *See Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946); *United States v. Wilson,* 135 F.3d 291, 305 (4th Cir.1998); *United States v. Cummings,* 937 F.2d 941, 944 (4th Cir.1991); *United States v. Chorman,* 910 F.2d 102, 110–11 (4th Cir.1990). Therefore, this Court concludes that portions of her statements are in fact incriminating.

Lastly, this Court must conclude that corroborating circumstances truly established the trustworthiness of the statement. This element is closely linked with the independent analysis of reliability.

■ The Court is of the opinion that those portions of Ms. Brown's statements to Mr. Adams, which recount what she actually saw or heard, are sufficiently reliable and trustworthy to be admitted into evidence without violating the Confrontation Clause of the Sixth Amendment to the United States Constitution. There are a number of facts and circumstances which warrant this conclusion. First, the statements to Mr. Adams were made reasonably close in time to the incident itself. Mr. Adams describes Ms. Brown as hysterical, distraught, and at times crying. She told Mr. Adams that something traumatic had happened. Mr. Adams described an individual who appeared to be suffering from pangs of guilt and needed to unburden herself from the stress of having participated in a crime. The person in whom Ms. Brown confided is a close friend that has no involvement with any

law enforcement agency. While Mr. Adams may have strongly counseled Ms. Brown to reveal this information to the RPD, there was no indication Ms. Brown was aware that she would be called upon to testify until after she was interviewed by Detective Simms.

While Ms. Brown's statements implicate other individuals, their primary objective does not appear to be shifting the blame to others. Her denial of involvement in the homicide appears to flow more from atonement and contrition than an attempt to finger another person. At the point in time in which Ms. Brown relayed her involvement to Mr. Adams, she had no motive to fabricate whatsoever and nothing to gain except relieving herself of the guilt.

Accordingly, after viewing the totality of the circumstances, the Court is therefore of the opinion that Ms. Brown's statements to Mr. Adams, prior to her interview by the RPD, are trustworthy and reliable.

### III. Conclusion

This Court will only admit into evidence those statements from Ms. Brown to Mr. Adams in which there is some indication that she is speaking from first-hand knowledge, and the statements must fall within the ambit of the planning and execution of the conspiracy. The Court will not admit her speculation as to what occurred while she was in the bedroom or what happened after the defendants left the apartment.

Thus, the Court will allow into evidence the statements made to Mr. Adams within the following boundaries:

1. The statements must precede Ms. Brown's interview with the RPD.

---

the defendants to do something which the law prohibits; knowing and willing participation by the defendants in the agreement; and an overt act by the defendants in furtherance of

the purpose of the agreement.' " *United States v. Hedgepeth,* 418 F.3d 411, 420 (4th Cir.2005) (quoting *United States v. Meredith,* 824 F.2d 1418, 1428 (4th Cir.1987)).

2. It will be limited to statements by Ms. Brown that involve events that she personally heard or witnessed.

3. The statements must fall within the ambit of the planning and execution of the conspiracy.

4. The following statements by Ms. Brown to Mr. Adams are explicitly allowed:

   a. That Ms. Brown participated in the planning of a drug transaction;

   b. That Ms. Brown called the source of the drugs;

   c. That Ms. Brown witnessed the arrival of the courier, but not what directly happened to him afterwards because it is uncertain whether Ms. Brown actually witnessed anyone beating the victim or taping him up;

   d. That Ms. Brown was directed to the bedroom;

   e. That when Ms. Brown emerged from the bedroom, she saw Defendants Jordan and Gordon with guns pointed at the victim, who was taped up;

   f. That Ms. Brown was ordered to go outside and downstairs to direct the source to come up and settle a discrepancy; and

   g. That the source started towards the apartment but ran when he saw the number of people inside.

It is so ORDERED.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

## ORDER

### (Denying Defendants' Motion *In Limine* Regarding Hearsay Statements of Octavia Brown)

THIS MATTER is before the Court on Defendants' motion to bar certain hearsay statements of Octavia Brown ("Ms. Brown") to a non-governmental agent. For the reasons stated at the hearing held on October 28, 2005 and in the accompanying Memorandum Opinion, Defendants' Motion *In Limine* is HEREBY DENIED.

It is so ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.