PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

PETER ROBERT JORDAN, a/k/a Pete,
a/k/a Richard Mercer,
            *Defendant-Appellant.*

No. 06-4258

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ARTHUR LORENZO GORDON, a/k/a Ron
Green, a/k/a New York,
            *Defendant-Appellant.*

No. 06-4264

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(3:04-cr-00058-HEH)

Argued: September 28, 2007

Decided: December 4, 2007

Before WILLIAMS, Chief Judge, GREGORY, Circuit Judge,
and Samuel G. WILSON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed in part; reversed in part by published opinion. Chief Judge
Williams wrote the majority opinion, in which Judge Gregory con-

curred. Judge Wilson wrote a separate opinion concurring in part and dissenting in part.

---

**COUNSEL**

**ARGUED:** Gerald Thomas Zerkin, Paul G. Gill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellants. David John Novak, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Acting Federal Public Defender, Alexandria, Virginia, for Appellant Arthur Lorenzo Gordon; Muriel-Theresa Pitney, Richmond, Virginia, Cary B. Bowen, BOWEN, CHAMPLIN, CARR & ROCKECHARLIE, Richmond, Virginia, for Appellant Peter Robert Jordan. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, Roderick C. Young, Matthew C. Ackley, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

**OPINION**

WILLIAMS, Chief Judge:

A jury convicted Arthur Gordon and Peter Jordan of murder while engaged in a drug trafficking offense, in violation of 21 U.S.C.A. § 848(e)(1)(A) (West 1999) and 18 U.S.C.A. § 2 (West 2000); conspiracy to use and carry firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C.A. § 924(o) (West 2000 & Supp. 2006); and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C.A. §§ 924(c) and 2 (West 2000 & Supp. 2006). The jury also convicted Jordan of conspiracy to distribute and to possess with intent to distribute crack cocaine and heroin, in violation of 21 U.S.C.A. § 846 (West 1999). On appeal, Gordon argues that his convictions are barred by the unambiguous terms of a November 26, 2002 plea agreement he entered into with the Government. Gordon and Jordan together raise Sixth Amendment and evidentiary challenges to certain testimony admitted at their joint trial, including a challenge to the sufficiency of the evidence.

We affirm in part and reverse in part. Because we conclude that Gordon's prior plea agreement forecloses his convictions in the Eastern District of Virginia for the crimes charged in the September 7, 2004 indictment, we reverse his convictions. On the other hand, we reject Jordan's Sixth Amendment and evidentiary challenges and thus affirm his convictions.

## I.

This case arose from the "brutal murder" of Dwayne Tabon. *United States v. Jordan*, 357 F. Supp. 2d 889, 891 (E.D. Va. 2005). On September 14, 2001, during a drug transaction in an apartment in Richmond, Virginia, Gordon and Jordan forcibly abducted Tabon, took him to another location, and set him on fire. *Id.* at 891. Suffering from burns over ninety percent of his body, Tabon died ten days later. *Id.* at 891.

On September 7, 2004, a grand jury sitting in the Eastern District of Virginia returned an indictment against Gordon and Jordan, charging both men with murder while engaged in a conspiracy to distribute and to possess with intent to distribute 50 or more grams of crack cocaine (Count One); conspiracy to use and carry a firearm during and in relation to the same crack cocaine conspiracy (Count Two); and possession of a firearm in furtherance of the crack cocaine conspiracy (Count Three). The indictment also charged Jordan with conspiracy to distribute crack cocaine and heroin from 1999 until June 17, 2004. Counts One, Two, and Three alleged that the offenses occurred on or about September 14, 2001.

On September 17, 2004, Gordon filed a motion to dismiss the indictment, arguing that the terms of his November 26, 2002 plea agreement with the Government did not permit his prosecution for the charged crimes. The district court denied Gordon's motion to dismiss the indictment, concluding that the plea agreement was unambiguous and proved no bar to the Government's prosecution of Gordon. *United States v. Gordon*, 343 F. Supp. 2d 514, 518 (E.D. Va. 2004).

Gordon's and Jordan's trial began on October 27, 2005. At trial, the Government sought to introduce statements made by a deceased alleged co-conspirator, Octavia Brown, to her friend Paul Adams.

Gordon and Jordan objected to the admission of the statements, arguing that, under *Crawford v. Washington*, 541 U.S. 36 (2004), the statements were "testimonial" and thus barred by the Sixth Amendment's Confrontation Clause. *United States v. Jordan*, 399 F. Supp. 2d 706, 708 (E.D. Va. 2005)("*Jordan II*"). They also argued that the statements were inadmissible hearsay. *Id.* The district court rejected these arguments and admitted the statements, concluding that the statements were non-testimonial and admissible under Federal Rule of Evidence 804(b)(3) as statements against interest. *Id.* at 708-710.

At the close of the Government's case-in-chief, Gordon and Jordan moved for a judgment of acquittal. The district court denied both motions. Gordon and Jordan renewed their motions at the close of all the evidence, and the district court again denied both motions.

Ultimately, the jury convicted Gordon and Jordan on all counts, and each was sentenced to life imprisonment. Gordon renewed his motion for judgment of acquittal or, alternatively, for a new trial, but the district court again denied the motion. Both defendants timely appealed. We have jurisdiction over this appeal pursuant to 28 U.S.C.A. § 1291 (West 2006).

## II.

We begin with Gordon's argument that his prosecution for the crimes charged in the 2004 indictment violated the terms of his earlier plea agreement. Gordon had previously been indicted by a grand jury sitting in the Eastern District of Virginia on September 18, 2002, on one count of conspiracy to distribute and to possess with intent to distribute 50 or more grams of crack cocaine, in violation of 21 U.S.C.A. § 846, and several counts of distribution of controlled substances. The charged conspiracy began "as early as 2001" and continued "through at least as late as August, 2002." (J.A. at 73.)[1] Gordon entered into a plea agreement with the Government on November 26, 2002.

Under the terms of the plea agreement, Gordon agreed to plead guilty to one count of distribution of a controlled substance, in viola-

---

[1]Citations to "(J.A. at ____.)" refer to the contents of the Joint Appendix filed by the parties to this appeal.

tion of 21 U.S.C.A. § 841 (West 1999 & Supp. 2007). In exchange, the Government agreed to dismiss the other counts in the indictment, including the count charging Gordon with the crack cocaine conspiracy. Specifically, Paragraph 5 of the plea agreement stated in pertinent part:

> The United States will not further criminally prosecute [Gordon] in the Eastern District of Virginia for the specific *conduct* described in the indictment or statement of facts. Therefore, [Gordon] does not have immunity for *crimes* related to, but not specifically set out in the indictment or statement of facts.

(J.A. at 77 (emphasis added).)

We review the district court's interpretation of a plea agreement *de novo*. *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004). In interpreting plea agreements, we draw upon contract law as a guide to ensure that each party receives the benefit of the bargain. *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993). Applying standard contract law, we enforce a plea agreement's "plain language in its ordinary sense," *United States v. Holbrook*, 368 F.3d 415, 420 (4th Cir. 2004)(internal quotation marks omitted), *vacated on other grounds*, 545 U.S. 1125 (2005), and "do not write the contracts of the parties retroactively, but merely construe the terms of the contract the parties have previously signed," *id.* (quoting *United States v. Race*, 632 F.2d 1114, 1119 (4th Cir. 1980)). "[W]hether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law." *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986). If the plea agreement is unambiguous as a matter of law, and there is no evidence of governmental overreaching, we should interpret and enforce the agreement accordingly. *Id.*

"Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement," we analyze a plea agreement with "greater scrutiny" than we would apply to a commercial contract. *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997). We thus hold "the Government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements." *Harvey*, 791 F.2d at 300.

On appeal, Gordon contends that, based on the language of the plea agreement, the Government could not prosecute him for any crimes that would require it to prove the conspiratorial *conduct* charged in the 2002 indictment. We agree.

The first sentence of Paragraph 5 of the plea agreement, the operative paragraph for purposes of this appeal, provides that the Government "will not further criminally prosecute [Gordon] in the Eastern District of Virginia for the specific *conduct* described in the indictment or statement of facts." (J.A. at 77 (emphasis added).) The clear focus of the first sentence is on the conspiratorial "conduct." The second sentence of Paragraph 5 in turn provides that Gordon "does not have immunity for *crimes* related to, but not specifically set out in the indictment or statement of facts." (J.A. at 77 (emphasis added).) Unlike the first sentence of Paragraph 5, this sentence speaks only of "crimes" — not "conduct" — related to those crimes charged in the 2002 indictment. It is almost too plain to state that the "conduct" spoken of in the first sentence is analytically and conceptually distinct from the "crimes" spoken of in the second sentence, for "crimes" is a much narrower concept than "conduct." *See Gavieres v. United States*, 220 U.S. 338, 345 (1911) ("While it is true that the conduct of the accused was one and the same, two offenses [or crimes] resulted, each of which had an element not embraced in the other."). The term "crime" is a legal term of art; it is an "act that the law makes punishable." *Black's Law Dictionary* 399 (8th ed. 2004). Conduct, in contrast, is "personal behavior, whether by action or inaction" and is a term that transcends the legal context. *Id.* at 315.

An illustration may help clarify this distinction: assume John Doe, a convicted felon with a controlled substance in his pocket, walked into a bank, brandished a firearm at the clerk, and then left after successfully robbing the bank. That behavior would constitute John Doe's *conduct*. From that conduct, however, Doe could be liable for multiple *crimes*. For instance, Doe could be charged with possession of a controlled substance in violation of 21 U.S.C.A. § 844 (West 1999 & Supp. 2007); bank robbery, in violation of 18 U.S.C.A. § 2113(a) (West 2000 & Supp. 2006); brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C.A. § 924(c)(1)(A)(ii) (West 2000 & Supp. 2006); and possession of a

firearm by a convicted felon, in violation of 18 U.S.C.A. § 922(g)(1) (West 2000 & Supp. 2006).

Thus, taken as a whole, Paragraph 5 permits the Government to prosecute Gordon for crimes "related" to those charged in the 2002 indictment, so long as they do not require the Government to prove the conduct underlying the 2002 conspiracy count as an element of the "related" crimes.[2]

For example, if, as part of the drug conspiracy, Gordon had murdered Tabon during a carjacking, nothing in the plea agreement would have stopped the Government from prosecuting Gordon for the murder under 18 U.S.C.A. § 2119(3) (West 2000 & Supp. 2006), the federal carjacking statute. Although the hypothetical carjacking no doubt would have qualified as an overt conspiratorial act, carjacking is not part of the conspiratorial conduct covered by the terms of the plea agreement.[3]

Importantly, before us the Government does not dispute that the conspiracy charged in each count of the 2004 indictment was the *same* conspiracy charged in the 2002 indictment against Gordon. Nevertheless, it contends that prosecution of Gordon for the crimes charged in the 2004 indictment did not violate the terms of the earlier plea agreement because those "crimes" were not charged in the 2002 indictment. This argument conflates the word "conduct" with the word "crime," even though, as we have explained, the terms are not synonymous. Instead, by choosing to use the term "conduct" in the first sentence of Paragraph 5 and the term "crime" in the second sen-

---

[2]Relatedly, the Government argues that the second sentence of Paragraph 5 of the plea agreement unequivocally carves out "crimes of violence" from inclusion in the agreement. (Appellee's Br. at 39.) Neither this sentence nor any other part of the plea agreement, however, mentions "crimes of violence." We will not read a "crimes of violence" clause into this plea agreement where one does not exist.

[3]By way of further example, Gordon's counsel conceded at oral argument that the Government could have prosecuted Gordon under 18 U.S.C.A. § 1111(b) (West 2000) for murder "[w]ithin the special maritime and territorial jurisdiction of the United States" if Gordon had murdered Tabon on federal land.

tence, the Government could only have meant different things; otherwise, the second sentence would have been entirely superfluous. If the Government meant to bargain away its right to prosecute Gordon for the "crime" of participating in a drug conspiracy yet retain its right to prosecute him for "crimes" requiring proof of the drug conspiracy, e.g., murder while engaged in a drug conspiracy, it should have used the word "crime" instead of the word "conduct" in the first sentence of the plea agreement with Gordon. If that had occurred, it would have been unnecessary to include a second sentence expressly permitting the Government to prosecute Gordon for crimes related to the crimes charged in the first sentence.

The correctness of our conclusion becomes apparent when considering Gordon's conviction for murder while engaged in a drug conspiracy. Although the physical act of murdering Tabon constituted conduct distinct from the conduct described in the 2002 indictment, the crime charged in the 2004 indictment was not simply murder, but murder *while engaged in a drug conspiracy*.[4] Therefore, in order to

---

[4]The district court overlooked this critical distinction when it concluded that the conspiracy charge in the 2002 indictment was legally and factually distinguishable from the "specific conduct" charged in Counts One, Two, and Three of the 2004 indictment, emphasizing that the 2002 indictment did not mention "murder, crimes of violence, firearms or analogous offenses." *United States v. Gordon*, 343 F. Supp. 2d 514, 518 (E.D. Va. 2004).

The district court believed that the use of the word "therefore" in the second sentence of Paragraph 5 buttressed its interpretation of the plea agreement by demonstrating that the second sentence was "intended to clarify the first." *Id.* With due respect to the district court, we believe that the plea agreement's use of the word "therefore" does not blur the line between the distinct meanings of the words "conduct" and "crime." Indeed, the word "therefore" only has real meaning in Paragraph 5 if we give the words "conduct" and "crime" their natural and different meanings. As we note above, to collapse the very real differences between the words "conduct" and "crime" so that "conduct" *really* means the same thing as "crime" in Paragraph 5, as the Government contends on appeal, renders the second sentence of Paragraph 5, including the word "therefore," completely unnecessary to effectuate the goals the Government now says it had in crafting the agreement. The most natural reading of

prosecute Gordon under the 2004 indictment, the Government had to prove *both* the physical act of murder and the conduct establishing the drug conspiracy — the same drug conspiracy alleged in the 2002 indictment. The Government itself recognized at trial that proof of the drug conspiracy conduct was as essential to its case as proof of the physical act of murder, as evidenced by the following statement from the Government's closing:

> Count 1 is the murder while engaged in a drug conspiracy. . . . While engaged in the drug conspiracy charged in Count 1, remember that drug conspiracy is possess[ion] with the intent to distribute 50 grams or more of crack cocaine. . . . That during this conspiracy they intentionally killed the victim or caused the intentional killing of the victim. And we're going to go into each of these elements separately.

(J.A. at 2586-87.)

This statement reflects the Government's perfectly correct understanding of the hornbook principle of criminal law that one element of a crime is no more "essential" than another. *See Patterson v. New York*, 432 U.S. 197, 210 (1977)("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."). The "drug conspiracy" element of the crime defined in 21 U.S.C.A. § 848(e)(1)(A) is as essential to the Government's burden of proof as the "murder" element itself. As such, we cannot validate the Government's prosecution of Gordon for the crimes charged in the 2004 indictment because to do so would run afoul of the plea agreement terms, i.e., the Government cannot meet its burden of proof on any of the charged crimes without proving the very conspiratorial conduct that was made off limits by the plea agreement.

---

the *language* of Paragraph 5, which gives the words "conduct" and "crime" their ordinary meanings, is that the Government is free to prosecute Gordon for crimes "related" to those crimes charged in the 2002 indictment so long as those prosecutions do not require it to prosecute the conspiratorial conduct alleged in the 2002 indictment.

Our reasoning comports with our decision in *United States v. Burns*, 990 F.2d 1426 (4th Cir. 1993). In that case, Burns sought dismissal of one count of travelling in interstate commerce to facilitate an unlawful drug activity ("interstate travel count") on the ground that an earlier plea agreement with the Government barred his prosecution for that crime. *Id.* at 1431. In the earlier agreement, Burns had pleaded guilty to two counts of travelling in interstate commerce to facilitate an unlawful drug activity in exchange for the Government's promise that it would not oppose his motion to dismiss the conspiracy counts in the indictment. *Id.* at 1429. After the Government learned new information regarding Burns's criminal activity, it twice sought and obtained superseding indictments against Burns charging him with three conspiracy counts and one interstate travel count. *Id.* at 1429-30. Based on the prior plea agreement, the district court dismissed the three conspiracy counts against Burns but refused to dismiss the interstate travel count. *Id.* at 1430.

In determining that the interstate travel count did not constitute the same conduct covered by the terms of Burns's earlier plea agreement, we noted that Congress made the interstate travel count a substantive offense separate from conspiracy, *id.* at 1431, and that "[t]he mere fact that evidence of interstate travel is offered to prove the objective fact of a conspiracy does not as a matter of law prevent the Government from prosecuting an individual subsequently for the separate interstate travel violation," *id.* at 1432. We further reasoned that "although evidence of interstate travel may be introduced as part and parcel of the prosecution's efforts to prove the existence of a conspiracy, interstate travel is not an essential element of that proof." *Id.* We thus rejected the claim that prosecution of the interstate travel count constituted reprosecution for the "same conduct" covered by the earlier plea agreement. *Id.*

Unlike *Burns*, where proof of interstate travel was not an essential element of the conspiracy charge that was dismissed, here proof of the drug conspiracy *is* an essential element of crime of murder while engaged in a drug conspiracy. The Government could not meet its burden of proof without proving both the physical act of murder *and* the existence of the charged drug conspiracy. Similarly, Gordon's other convictions — for conspiracy to use and carry a firearm during and in relation to a drug trafficking offense and for possession of a

firearm in furtherance of a drug trafficking offense — also depend on proof of the charged drug conspiracy.

In short, reading the first two sentences of Paragraph 5 of the plea agreement together, we conclude that the plea agreement unambiguously provides that Gordon may not be prosecuted in the Eastern District of Virginia for the offenses in the 2004 indictment because each offense requires the Government to prove, as an element of the offense, the very drug conspiracy covered by the terms of Gordon's earlier plea agreement. To be sure, Gordon's plea agreement allows the Government to prosecute him for crimes related to those charged in the 2002 indictment so long as the conduct underlying the 2002 conspiracy charge is not an element of the related crimes. But here the Government *had* to prove the conspiratorial conduct charged in the 2002 indictment in prosecuting Gordon for each crime charged in the 2004 indictment. In so doing, the Government broke its promise to Gordon that it would not prosecute him for the specific conduct described in the 2002 indictment. Further, we note that "[b]ecause a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated." *United States v. Peglera*, 33 F.3d 412, 414 (4th Cir. 1994).

We recognize, however, that the Government likely did not intend to immunize Gordon from federal prosecution for Tabon's murder, particularly if its investigation into Tabon's murder had commenced at the time of the 2002 plea agreement. Judge Luttig has offered a succinct and accurate response to such concerns:

> [The Government] should be bound by the terms of its agreement whether or not that agreement ultimately has the effect anticipated at the time of execution. The Government, no less (and arguably more) than a private citizen, must be held to the agreements it enters into with its citizens.

*United States v. Gezen*, No. 91-7696, 1992 WL 289, at *3 (4th Cir. Jan. 3, 1992)(unpublished).

Thus, while the Government likely did not intend to limit its ability to prosecute Gordon for Tabon's murder, we are bound to interpret

the language the Government did use in the 2002 plea agreement, not the language it now wishes it had chosen.

Moreover, even were we to find some ambiguity in the Government's use of the terms "conduct" and "crime," in the context of interpreting plea agreements "both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities." *Harvey*, 791 F.2d at 300. Thus, any such ambiguity would run against the Government and would not change our result. Of course, nothing we say today in anyway undermines *Harvey*'s suggestion that, in a particular case, it might "be possible to establish by extrinsic evidence that the parties to an ambiguously worded plea agreement actually had agreed — or mutually manifested their assent to — an interpretation as urged by the Government." *Id.* at 303. Like *Harvey*, however, even were we to find the 2002 plea agreement ambiguous, "that evidence simply does not exist" in this case. *Id.*

In closing, we also wish to echo the thoughts of Judge Wilkinson in noting that:

> [O]ur decision is in no way a reflection on the trial judge, who handled the case admirably under the circumstances. We further believe that the government inadvertently breached the plea agreement rather than acting in bad faith.

*Peglera*, 33 F.3d at 415.

As in *Peglera*, however, Gordon "failed to receive his benefit of the bargain." *Id.* We thus conclude that Gordon's convictions cannot stand in light of the plea agreement. Accordingly, we reverse Gordon's convictions.

### III.

In contrast to Gordon, Jordan has no prior plea agreement with the Government. We thus must turn to Jordan's contention that the admission of certain statements at trial, which were never "test[ed] in the crucible of cross-examination," *Crawford*, 541 U.S. at 61,

deprived him of his Sixth Amendment Confrontation rights or, alternatively, that the statements constituted inadmissible hearsay under the Federal Rules of Evidence. We review the district court's decision to admit the testimony for an abuse of discretion. *United States v. Hassouneh*, 199 F.3d 175, 182 (4th Cir. 2000).

The statements at issue were made by Octavia Brown, an alleged co-conspirator of Gordon and Jordan, to her friend Paul Adams. Adams picked up Brown on the night of Tabon's murder after receiving her frantic phone call. (J.A. at 1952-53.) Several days after the murder, Brown began to stay at Adams's apartment. Brown eventually related to Adams "[i]n bits and pieces" what happened on the night that she frantically called him. (J.A. at 1962.) Brown's statements to Adams included her admissions that she participated in the planning of a drug transaction; that she called the source of the drugs; that she witnessed the arrival of the drug courier (Tabon); that she was directed to the bedroom; that when she emerged from the bedroom, she saw Gordon and Jordan with guns pointed at the drug courier, who was taped up; that she was ordered to go outside and downstairs to direct the source to come up and settle a discrepancy; and that the source started toward the apartment but ran when he saw the number of people inside. *Jordan II*, 399 F. Supp. 2d at 710-11. Brown was incarcerated on matters unrelated to this case and committed suicide in 2002.

Noting that the critical issue was whether Brown reasonably believed the statements would later be used at trial at the time she made them, the district court ruled that Brown's statements to Adams were non-testimonial and thus did not implicate the Sixth Amendment's Confrontation Clause. *Jordan II*, 399 F. Supp. 2d at 709. The district court also concluded that Brown's statements, although hearsay, were admissible as statements against penal interest under Rule 804(b)(3). *Id.* at 710.

In *Crawford*, the Supreme Court divided out-of-court statements into two categories: those that are "testimonial" and those that are not. *Crawford*, 541 U.S. at 60-69. The Court stated that testimonial hearsay is the "primary" concern of the Confrontation Clause. *Id.* at 53; *United States v. Iskander*, 407 F.3d 232, 240 (4th Cir. 2005). The Confrontation Clause bars the use of testimonial statements unless the

declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-54. The *Crawford* Court gave a non-exclusive list of three examples of "testimonial" statements: "*ex parte* in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52 (internal quotation marks omitted).

To our knowledge, no court has extended *Crawford* to statements made by a declarant to friends or associates. *See United States v. Franklin*, 415 F.3d 537, 545 (6th Cir. 2005)(concluding that statements were non-testimonial where witness "was privy to [Declarant]'s statements only as his friend and confidant"); *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004)("Thus, we conclude that a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of *Crawford*."); *United States v. Manfre*, 368 F.3d 832, 838 n.1 (8th Cir. 2004)("[Declarant]'s comments were made to loved ones or acquaintances and are not the kind of memorialized, judicial-process-created evidence of which *Crawford* speaks."). Even assuming that statements to friends or associates may be considered testimonial in the rare case, the district court correctly concluded that "[t]he critical *Crawford* issue here is whether Ms. Brown, at the time she made her statements to Mr. Adams, reasonably believed these statements would be later used at trial." *Jordan II*, 399 F. Supp. 2d at 708. As the district court found, "there was no indication Ms. Brown was aware that she would be called upon to testify until she was interviewed" by the Richmond City Police Department. *Id.* at 710. Brown's statements, made to a friend rather than to law enforcement personnel, "appear[ed] to flow more from atonement and contrition" than from an attempt to record past events or shift blame to others with the knowledge that the statements would later be used in court. *Id.* at 710. There is simply no evidence — only Jordan's conjecture — to suggest that Brown knew that her statements to her friend

Adams would later be used at trial. We therefore conclude that the statements were non-testimonial and thus do not need to resort to *Crawford* and its Sixth Amendment principles.[5]

Jordan alternatively contends that, even if Brown's statements to Adams are non-testimonial, they are inadmissible hearsay under Federal Rule of Evidence 802. The district court found that the statements fell within Rule 804(b)(3), the hearsay exception for statements against penal interest. Under Rule 804(b)(3), if the declarant is unavailable as a witness, "[a] statement which . . . at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true" is not excluded by the hearsay rule.[6] Fed. R. Evid. 804(b)(3).

Because of Brown's unavailability to testify, the sole question under Rule 804(b)(3) is whether Brown's statements to Adams, at the time they were made, exposed her to criminal liability such that a reasonable person in her shoes would not have made the statements unless believing them to be true. Brown's statements to Adams related to her involvement in a plan to lure a drug dealer to an apart-

---

[5]We note that any doubt left by *Crawford* as to the applicability of the Confrontation Clause to non-testimonial hearsay statements was dispelled by the Supreme Court's unanimous decision in *Whorton v. Bockting*, 127 S. Ct. 1173 (2007). The *Whorton* Court made clear that *Crawford* overruled *Ohio v. Roberts*, 448 U.S. 56 (1980), and that "under *Crawford* . . . the Confrontation Clause has no application to [out-of-court non-testimonial] statements and therefore permits their admission even if they lack indicia of reliability." *Whorton*, 127 S. Ct. at 1183.

[6]The district court, citing *United States v. Lowe*, 65 F.3d 1137, 1145 (4th Cir. 1995), stated that for Brown's statements to be admissible as statements against penal interest, the Fourth Circuit requires "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement." *United States v. Jordan*, 399 F. Supp. 2d 706, 709 (E.D. Va. 2005). As Rule 804(b)(3) makes clear, however, corroborating circumstances are only required if the statement is "offered to exculpate the accused." Fed. R. Evid. 804(b)(3). *Lowe* involved evidence offered to exculpate the accused. Here, it is plain that Brown's statements were in no way offered to exculpate Gordon or Jordan. Thus, the district court need not have discussed whether "corroborating circumstances" existed.

ment and described her observations and actions after she emerged from the bedroom on the night of Tabon's murder. She admitted that she called the dealer to order drugs, that she knew the group planned to rob the dealer, and that she further participated in the conspiracy by trying to lure another individual into the apartment. As a co-conspirator, Brown was legally responsible for all reasonably foreseeable acts her co-conspirators undertook in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946)(noting that conspirators who have not affirmatively withdrawn are liable for reasonably foreseeable overt acts of co-conspirators); *United States v. Cummings*, 937 F.2d 941, 944 (4th Cir. 1991)(same). Brown's statements thus no doubt subjected her to criminal liability so that a reasonable person would not have made them had they been untrue.

Jordan counters that Brown's statements were not entirely self-inculpatory, i.e., that they were given in bits and pieces as part of a narrative consisting of both self-inculpatory and non-self-inculpatory parts. Of course, the self-inculpatory nature of a statement can only be determined "by viewing [the statement] in context." *Williamson v. United States*, 512 U.S. 594, 603 (1994). In *Williamson*, the Supreme Court instructed that "statement" should be defined narrowly because "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." *Id.* at 599. But the Court noted that "confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor." *Id.* at 603.

Here, although Brown's statements to Adams inculpated Jordan, they also subjected *her* to criminal liability for a drug conspiracy and, by extension, for Tabon's murder. Brown made the statements to a friend in an effort to relieve herself of guilt, not to law enforcement in an effort to minimize culpability or criminal exposure. We thus conclude that Brown's statements to Adams were admissible under Rule 804(b)(3) and that the district court did not abuse its discretion in admitting them into evidence.[7]

---

[7]Even if we were to assume some error in the admission of Brown's statements, the error was no doubt harmless in light of the overwhelming

IV.

Based on the foregoing, we hold that Gordon's convictions in the Eastern District of Virginia for murder while engaged in a crack cocaine conspiracy, conspiracy to use and carry a firearm during and in relation to a crack cocaine conspiracy, and possession of a firearm in furtherance of a crack cocaine conspiracy cannot stand in light of the terms of his plea agreement. On the other hand, we reject Jordan's Sixth Amendment and evidentiary challenges to his convictions.[8] Accordingly, we reverse Gordon's convictions and affirm Jordan's convictions.

*AFFIRMED IN PART;*
*REVERSED IN PART*

---

evidence introduced by the Government. *See United States v. Banks*, 482 F.3d 733, 741-42 (4th Cir. 2007)("Evidentiary rulings are 'subject to harmless error review.' . . . [W]e need only be able to say with fair assurance, after pondering all that has happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." (citations omitted)).

[8]We note that Jordan also challenged the sufficiency of the evidence supporting his convictions. We have conducted an independent review of the record; "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government," as required by the appropriate standard of review, *United States v. Burgos*, 94 F.3d 849, 863 (4th Cir. 1996)(en banc), we believe "the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt," *id.* (quoting *United States v. Powell*, 469 U.S. 57, 67 (1984)). Most of Jordan's argument amounts to an attack on the credibility of the Government's witnesses, but "assessing the credibility of witnesses is within the province of the jury — a task in which we decline to engage at this stage of the proceedings." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995); *see also United States v. Beidler*, 110 F.3d 1064, 1070 (4th Cir. 1997)(describing the jury as "the sole judge of the credibility of the witnesses"). Accordingly, we reject Jordan's argument.

WILSON, District Judge, concurring in part and dissenting in part:

I concur in part III of the court's opinion and in the affirmance of Jordan's conviction. I dissent as to the remainder.

> The United States will not further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the indictment or statement of facts. *Therefore, defendant does not have immunity for crimes related to, but not specifically set out in the indictment or statement of facts.* (Emphasis added).

I dissent because I can neither find the clear, unambiguous meaning the majority finds in these two sentences nor conclude that a remand is incapable of supplying a mutually agreed upon meaning. Although I fully agree that if extrinsic evidence cannot supply a mutually agreed upon meaning we must construe any ambiguity against the United States, I cannot agree, as the majority has concluded, that "evidence simply does not exist in this case" of a mutual understanding. I agree that it does not exist on the record before us. However, it does not exist on the record before us because the district court found that the language the majority finds unambiguously prohibited the prosecution, unambiguously permitted it, and it had no reason to explore the matter further.

I agree that the government must live by its agreements, but before we conclude that the United States' agreement precluded it from prosecuting Gordon for murder in the course of his drug dealing, we should be sure extrinsic evidence is incapable of supplying a mutually agreed upon meaning. I would remand for that purpose. Therefore, I respectfully dissent.