**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 15-4316**

─────────────

UNITED STATES OF AMERICA,

> Plaintiff - Appellee,

> v.

XAYVER JERVONTE-MARQUI WARNER,

> Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:13-cr-00252-RJC-2)

─────────────

Argued:  January 28, 2016               Decided:  April 27, 2016

─────────────

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

─────────────

Sentence vacated and case remanded by published opinion.  Judge Niemeyer wrote the opinion, in which Judge King and Judge Duncan joined.

─────────────

**ARGUED:**  Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  Ross Hall Richardson, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.   Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

─────────────

NIEMEYER, Circuit Judge:

Xayver Warner, who pleaded guilty pursuant to a plea agreement to one count of aiding and abetting the theft of a firearm, contends that the government breached the plea agreement. We agree.

In the plea agreement, the government agreed to advise the district court at sentencing that the parties had agreed that the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) (increasing a defendant's offense level for use or possession of a firearm in connection with another felony offense) did not apply. The government's agreement on the inapplicability of the enhancement was based, at least in part, on its view that a North Carolina conviction for breaking and entering a motor vehicle did not constitute a felony offense for a defendant with Warner's criminal history.

At sentencing, however, the government advised the court that it had changed its position on whether a North Carolina breaking and entering offense constituted a felony, concluding that it did, regardless of a defendant's criminal history. Nonetheless, the government asked the court to honor the plea agreement and not apply the enhancement to Warner. The court, however, chose to apply the enhancement and sentenced Warner to 48 months' imprisonment.

2

Because we conclude that the government, although acting in good faith, breached its undertaking in the plea agreement by stating that the enhancement did apply, we vacate Warner's sentence and remand for resentencing before a different district judge, as required by Santobello v. New York, 404 U.S. 257, 263 (1971).

I

After Warner and an accomplice broke into 19 motor vehicles in a parking deck in Charlotte, North Carolina, and stole a .40 caliber pistol from one of the vehicles, a federal grand jury returned an indictment against Warner, charging him with stealing a firearm that had moved in interstate commerce and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(l) and 2. The government and Warner's counsel thereafter discussed the possibility of a plea agreement. During negotiations, Warner's counsel stated in an email to the government that a plea agreement "would obviously have to include dismissal of all state charges[,] . . . [and] [w]e would also need a stipulation that the 4-level enhancement under § 2K2.1(b)(6)(B) [for using or possessing 'any firearm or ammunition in connection with another felony offense'] does not apply." In a responding email, the Special Assistant U.S. Attorney stated, "[A]t this time[,] I do not have information

3

that would implicate [Warner] under [§ 2K2.1(b)(6)(B)]." She added that "[t]he investigation and talks with witnesses and the co-Defendant are ongoing[,] but I can as of now agree that this [enhancement] does not apply."

The next day, on December 13, 2013, Warner signed a plea agreement with the government in which he agreed to plead guilty to the charge that he had aided and abetted the theft of a firearm. The agreement included the following provision:

> 7. Pursuant to Rule 11(c)(1)(B), the parties agree that they will jointly recommend that the Court make the following findings and conclusions as to the U.S.S.G.:
>
> *   *   *
>
> d. The parties agree that the 4-level increase under 2K2.1(b)(6)(B) does not apply.
>
> e. The United States will inform the Court and the probation office of all facts pertinent to the sentencing process and will present any evidence requested by the Court.

The agreement also included a provision by which Warner waived his right to appeal "whatever sentence [was] imposed," except to raise claims of ineffective assistance of counsel or prosecutorial misconduct.

Following a plea colloquy, the district court accepted Warner's guilty plea pursuant to the plea agreement, and a probation officer subsequently prepared a presentence report. In the presentence report, the probation officer recommended that the § 2K2.1(b)(6)(B) 4-level enhancement be applied,

4

concluding that Warner had used or possessed a firearm in connection with another felony offense -- namely, the 19 counts of breaking or entering a motor vehicle with which Warner had been charged in a North Carolina state court. With the enhancement, the probation officer calculated Warner's offense level to be 23, which, when combined with Warner's criminal history category of II, resulted in a Guidelines sentencing range of 51 to 63 months' imprisonment. The probation officer noted that if the district court accepted the government's position, as stated in the plea agreement, that § 2K2.1(b)(6)(B) did not apply, Warner's Guidelines range would instead be 33 to 41 months' imprisonment.

Warner objected to the presentence report's recommendation to apply § 2K2.1(b)(6)(B), arguing that the "enhancement is inapplicable for two distinct reasons; first, because [he] neither 'used' nor 'possessed' the firearm, and second, because there was no 'connection with another felony offense.'"

The government filed a response entitled "Objections to the Presentence Report," in which it noted that it had agreed with Warner in his plea agreement that § 2K2.1(b)(6)(B) did not apply and requested that the district court therefore not apply the enhancement. In the same filing, however, the government proceeded to state that it had revised its position regarding when certain types of North Carolina felony offenses count as

5

felonies for federal sentencing purposes, and it clearly indicated that, under its new position, the enhancement would properly apply to Warner. It stated:

> The probation office correctly notes in paragraph 19 of the Presentence Investigation Report that in the course of the crime of conviction a firearm was possessed in connection with another offense, that being breaking and entering multiple motor vehicles in violation of North Carolina General Statute 14-56, a class I felony. However, at the time that the plea agreement was made, the Government's position on how to treat a North Carolina class I offense for purposes of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), resulted in a finding that 14-56 was not a felony for federal purposes because it was not a crime punishable by imprisonment in excess of a year as applied to this Defendant and his criminal history. The Government's approach to Simmons analysis at the time the plea agreement was made treated a North Carolina class I offense committed on or after December 1, 2011 as a felony punishable by imprisonment in excess of a year, only where the defendant was a North Carolina criminal history category V or higher. On June 5, 2013, the date of the offense conduct, Warner was a North Carolina criminal history category II. Thus, Warner's criminal history was not sufficient to pass Simmons analysis as applied at the time of the plea agreement and his conduct was not considered "another felony offense" for purposes of 2K2.1.
>
> On December 1, 2011 the North Carolina Justice Reinvestment Act increased North Carolina state penalties such that all felonies could be punishable by a term of imprisonment exceeding one year. Despite these December 1, 2011 changes, concerned that the changes may not satisfy the Appellate Courts, the Government maintained the conservative position that the changes were not a cure to the Simmons issue. As of August 4, 2014, the Government has taken the new position, in light of United States v. Valdovinos, 2014 WL 3686104 (4th Cir. July 25, 2014), that the December 2011 North Carolina Justice Reinvestment Act cured any infirmity in the class H and I North

6

Carolina state felonies such that these offenses <u>are</u> <u>felonies</u> for federal purposes regardless of the criminal history category of the offender.

(Emphasis of "felony" or "felonies" in original; other emphasis added). The government explained, however, that "[b]ecause [it] made its agreement with Warner prior to this new official position on <u>Simmons</u>, [it] [was] not seek[ing] the 2K2.1(b)(6)(B) enhancement." Instead, it "respectfully ask[ed] that the Court honor the agreement of the parties."

Arguing that the government's statement to the court breached the plea agreement, Warner filed a motion for specific performance of the agreement, requesting that the district court (1) declare the government to be in breach of the plea agreement; (2) strike the government's objection from the docket; (3) direct the government to file a new objection agreeing with defense counsel's arguments as to why the enhancement was inapplicable; and (4) transfer Warner's case to a different district judge for sentencing. Warner explained that the parties' agreement that the enhancement does not apply "was based on the facts of the case, not on any kind of legal issue involving <u>Simmons</u> or <u>Valdovinos</u>."

At the sentencing hearing, the district court denied Warner's motion for specific performance, concluding that the government had "complied with the conditions of the plea agreement." The court thereupon concluded that the enhancement

7

was applicable and therefore that Warner's advisory Guidelines range was 51 to 63 months' imprisonment. After hearing from Warner and his family, the court imposed a downward-variance sentence of 48 months' imprisonment.

From the district court's judgment, Warner filed this appeal, seeking specific performance of his plea agreement and resentencing before a different district judge. He also challenges two aspects of the district court's Guidelines calculations.

## II

Warner contends that the government breached its promise in the plea agreement to inform the sentencing court "that the 4-level increase under 2K2.1(b)(6)(B) does not apply" when it submitted a filing that informed the court that it no longer agreed with this position. According to Warner, even though the government "asked the court not to apply the enhancement," it nonetheless indicated at the same time that it "viewed that request as factually and legally wrong," "mak[ing] clear that the government would have recommended the 4-level enhancement but for its agreement with Warner." Warner contends further that the government's breach was material because "[e]mails between Warner's counsel and the prosecutor demonstrate[] that

8

the agreement depended on the government's recommendation that § 2K2.1(b)(6)(B) did not apply."

The government argues that it agreed to "recommend against application of [the] four-level increase" and that it did so "unequivocally and consistently." It acknowledges that its discussion of the Simmons issue "provided the district court with new and relevant legal authority that tended to support application of the enhancement," but it contends that it "had a responsibility to inform the district court of that authority," maintaining that, "[a]s an officer of the court, the prosecutor could not object to the probation officer's recommendation that the enhancement be applied without grappling with the legal authority that might support application of the enhancement." Finally, the government argues, even if it breached the plea agreement, the breach would not be material because "[b]oth Warner and the district court recognized the position of the United States as recommending that the four-level enhancement under § 2K2.1(b)(6)(B) should not apply to Warner."

When interpreting plea agreements, "we draw upon contract law as a guide to ensure that each party receives the benefit of the bargain," and to that end, we "enforce a plea agreement's plain language in its ordinary sense." United States v. Jordan, 509 F.3d 191, 195 (4th Cir. 2007) (internal quotation marks and citation omitted). Although we employ traditional principles of

contract law as a guide, we nonetheless give plea agreements "greater scrutiny than we would apply to a commercial contract" "[b]ecause a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement." Id. at 195-96 (internal quotation marks and citation omitted). At bottom, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262.

In the plea agreement before us, the government agreed that it would, jointly with the defendant, "recommend that the Court make the following findings and conclusions as to the U.S.S.G.: . . . The parties agree that the 4-level increase under 2K2.1(b)(6)(B) does not apply [and] [t]he United States will inform the Court . . . of all facts pertinent to the sentencing process." (Emphasis added). The agreement's use of the verb "recommend" in the context of what the government promised to advise the court is, to be sure, somewhat awkward, but the substance of the promise that the government made is clear: The government agreed to advise the court of its position that U.S.S.G. § 2K2.1(b)(6)(B) does not apply in this case.

10

That the government clearly understood the precise nature of this promise -- i.e., to represent its position, not simply to make a recommendation -- is demonstrated by both the email exchanges leading to the plea agreement and the government's filing with the court after execution of the plea agreement. Before the agreement was signed, the government acceded to Warner's demand for a stipulation that the enhancement did not apply, stating that it "[did] not have information that would implicate [Warner] under [§ 2K2.1(b)(6)(B)]" and that it could agree with the position that "[the enhancement] does not apply." Similarly, after execution of the agreement and before sentencing, the government recognized that it had not agreed in the plea agreement simply to make a recommendation, but that it had agreed to state its position that the enhancement did not apply. The nature of its promise was confirmed when it advised the court that since signing the agreement, it "ha[d] taken the new position" that the enhancement would apply, although it urged the court to honor the agreement despite the government's "new position." (Emphasis added). Thus, in giving this explanation, the government again recognized that it had agreed to represent its position on the enhancement, not to recommend whether to apply the enhancement. The difference is significant.

The government's advice to a court that an enhancement applies but that the court should nonetheless not apply the enhancement in the particular circumstances of the case, for whatever reason, is substantively different from a statement by the government to the court that it holds the position that the enhancement does not apply. On receiving the former advice, the court would feel free to reject the advice as a mere recommendation. But on receipt of the latter advice, the court would not feel so free to reject the government's position, unless and until it conducted a careful review of the record and the law and determined that it disagreed with the government on the applicability of the enhancement.

It is true, as the government argues, that even as the government announced its "new position" on the enhancement's applicability to Warner, it repeatedly requested that the sentencing court "not apply the enhancement" on the ground that the court should "honor the agreement of the parties." But the government's plea agreement obligation was more than simply recommending that the court not impose the enhancement; it had promised to advise the court of its position that the enhancement "does not apply." And thus, even though the government did recommend to the district court that it should not apply the enhancement, the government breached its promise to tell the court that the enhancement did not apply.

12

We also conclude that the government's breach was material. "Central to [the] determination of the materiality of a breach is 'the extent to which the injured party will be deprived of the benefit which he reasonably expected.'" United States v. Scruggs, 356 F.3d 539, 543-44 (4th Cir. 2004) (quoting Restatement (Second) of Contracts § 241 (1981)). In this case, the record amply demonstrates that the government's willingness to agree that § 2K2.1(b)(6)(B) was inapplicable was critical to Warner's acceptance of the plea agreement, as manifested by the negotiations. The government nonetheless argues that any breach cannot be material because "[b]oth Warner and the district court recognized the position of the United States as recommending that the four-level enhancement . . . should not apply to Warner." But this argument again overlooks the distinction between requesting that the court not impose the enhancement because of the parties' plea agreement, as opposed to jointly advising the court of the parties' position that the enhancement was inapplicable.

We therefore conclude that the government breached its plea agreement with Warner, albeit with a pure motive, and that the breach was material, leaving open only the issue of the appropriate remedy.

When a court of appeals finds a material breach of a plea agreement and the defendant seeks to withdraw his guilty plea,

13

the court should remand the case to the district court to assess whether, in the circumstances of the case, it would be appropriate to grant that relief or the lesser relief of specific performance of the agreement. See Santobello, 404 U.S. at 263. If, however, the defendant seeks only specific performance, then the court should honor that election, see United States v. Brown, 500 F.2d 375, 378 (4th Cir. 1974), and remand with direction that the defendant "be resentenced by a different judge," Santobello, 404 U.S. at 263.

In this case, Warner has unequivocally elected to have specific performance. Accordingly, we vacate Warner's sentence and remand the case for resentencing before a different district judge.

Because of Warner's election for specific performance, we must, of course, also enforce the provision in his plea agreement by which he waived his appeal rights. Therefore, we do not reach his challenges to the district court's calculations under the Sentencing Guidelines.

SENTENCE VACATED AND CASE REMANDED

14